# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 13-0164 |
| HOMER GROSS | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is Defendant Homer Gross' Motion for Recusal of U.S. Attorney's Office (R. Doc. 240). In his motion, the Defendant make numerous allegations against the United States Attorney for the Eastern District of Louisiana and other members of his office that, according to the Defendant, shows that the United States Attorney's Office for the Eastern District of Louisiana (USAO-EDLA) lacks impartiality and acted in a retaliatory manner towards his appointed counsel. Mr. Gross argues that to avoid any inference or appearance of impropriety, the Court should recuse the entire USAO-EDLA. The Government opposes the Defendant's motion. (R. Doc. 254). For the following reasons, the Defendant's motion is DENIED.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Homer Gross ("Gross") was a mid-level heroin trafficker in the metro New Orleans area. On July 25, 2013, Mr. Gross was indicted on 16 counts of violating the Federal Controlled Substances and Federal Gun Control Act (R. Doc. 1). On August 13, 2013, he made his initial appearance before a federal magistrate judge and the Office of the Federal Public Defender was appointed to represent him (R. Doc. 12). On September 30, 2013, Defendant filed a motion to compel discovery of *Brady* material from the government regarding the investigation and arrest

by the FBI of one of the NOPD law enforcement officers who had been involved in the investigation of the Defendant and who was the affiant of a search warrant pertaining to Count 8 of Mr. Gross's indictment. (R. Doc. 185-1 at 2). At the October 24, 2013 hearing on this motion, the Government denied possessing any information that law enforcement personnel involved in investigating Defendant Gross had been under federal investigation themselves. (R. Doc. 185-1 at 2). Defense counsel contradicted the Government statement by stating that she had information that the NOPD officer was being investigated, and this Court then ordered the Government to produce the requested documents. (R. Doc. 185-1 at 3). After the hearing, defense counsel contends that the AUSAs angrily confronted her in the hallway outside of the courtroom. She claims that the exchange was very loud and heated and was witnessed by a courtroom security officer, as well as this Court's JA and law clerk. (R. Doc. 185-1 at 3).

On November 6, 2013, two days before the Government was ordered to produce the documents for an *in camera* inspection, the Government asked the Court to dismiss count 8 of the Indictment stating that, "After a recent review of the evidence in this case, the Government believes it would be in the best interest of justice to dismiss Count 8 of this indictment, based on additional facts that have recently been obtained by the Government." (R. Docs. 39, 41). The Court granted the Government's motion to dismiss count 8. (R. Doc. 42).

The parties subsequently negotiated a plea agreement which resulted in Defendant pleading guilty on February 20, 2014 to a two-count superseding bill of information charging him with a violation of the Federal Controlled Dangerous Substance Act and a federal firearms violation. (R. Doc. 185-1 at 3, R. Doc. 59). The Government claims that Defendant Gross's assistance was fairly taken into consideration when he pled guilty to the superseding bill of information, and that the plea agreement was provided to Defendant in part to reward him for

cooperation with the FBI. (R. Doc. 182 at 3). Because the Government agreed to allow Defendant to plead guilty to reduced charges, Defendant faces only a statutory minimum of 15 years imprisonment instead of the minimum of 25 years he would otherwise have been required to serve if he had been convicted at trial. (R. Doc. 182 at 2-3). The plea agreement contains specific language regarding a potential 5K reduction, stating that the Government agrees to bring to the attention of the Court any cooperation rendered by the Defendant prior to sentencing, and that the Government may choose, at its sole discretion, to move the Court to impose a reduced sentence. (R. Doc. 182 at 3).

After pleading guilty, the Defendant was debriefed by prosecutors to determine if he would be able to provide any additional information about recent criminal activity. (R. Doc. 182 at 3). The Government claims that Defendant was never promised a 5K motion would be filed for participating in this discussion. (R. Doc. 182 at 3). The Government also claims that the information provided by the Defendant at this time did not rise to the level of substantial assistance that would normally warrant a downward departure in sentencing. (R. Doc. 182 at 4). Because the pre-plea assistance Defendant gave to the FBI was already considered in the plea deal and the subsequent post-plea cooperation did not constitute "substantial assistance," the Government determined that Defendant was not eligible for a 5K motion. (R. Doc. 182 at 4).

On February 12, 2016, the Defendant filed a Motion to Compel Specific Performance of the Plea Agreement that Defendant claims was negotiated between the parties verbally and asked the Court to order the Government to provide a 5K sentence reduction. (R. Doc. 185). On February 24 and 25, 2016, Defendant served three subpoenas to federal law enforcement agencies compelling testimony and seeking documents. In response, the Government filed a Motion to Quash Subpoenas. (R. Doc. 192). On March 7, 2016, the Court stayed the Motion to

Quash Subpoenas and ordered the Government to file a memorandum with supporting evidence in camera outlining both the assistance provided by Defendant Gross, as well as its reasons and rationale for declining to offer Defendant Gross a 5k reduction despite his assistance.

After reviewing the memorandum and supporting evidence in camera, on March 23, 2016, the Court issued an Order & Reasons granting the Government's Motion to Quash the Subpoenas and denying the Defendant's Motion to Compel Specific Performance of the Plea Agreement, finding that the Government had "several valid reasons" for not filing a 5k

> Including, inter alia, that fact that Mr. Gross's post-indictment conduct did not result in the arrest or conviction of any other defendant, and the fact that he was "double dipping and selling on the side while he was cooperating with the FBI." Email from Maurice Landrieu to Spiro Latsis on September 1, 2015 (Ex. 9).

(R. Doc. 207). The Court then granted Defendant's Motion for Production of Documents to provide defense counsel an opportunity to review the provided materials. (R. Doc. 229).

## II.    PRESENT MOTION

After reviewing the produced documents, Defendant filed this motion on August 15, 2016, putting forth several allegations against the Government including charges of unethical conduct, failure to investigate, and a bad-faith failure to give proper attention to Defendant's substantial assistance to the Government, all of which stem from a desire to retaliate against defense counsel for her actions in this and other cases. (R. Doc. 240). Defendant cites to several cases granting recusal as well as the recent decision by Attorney General Loretta Lynch to remove the USAO-EDLA from several cases under its purview.

The Government opposes the motion. (R. Doc. 254). The Government argues that defense counsel's arguments are unsupported and merely inferential. Furthermore, the Government highlights that granting 5K reductions is within the Government's sole discretion

and Mr. Gross was not nor could he have been promised such a reduction. Citing multiple federal

court decisions, the Government points out that recusing an entire office of federal prosecutors is

an extraordinary remedy that one Court of Appeals has described as almost always reversible

error.

## III.    LAW & ANALYSIS

*United States v. Bolden* is the seminal case on the issue of recusing an entire prosecutors'

office. 353 F.3d 870 (10th Cir. 2003). In that case the Tenth Circuit held that "the

disqualification of Government counsel is a drastic measure and a court should hesitate of

impose it except where necessary." *Id.* at 878. "Further, because disqualifying government

attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify a

specific Assistant United States Attorney, not all the attorneys in the office." *Id.*  The court noted

that every circuit court that considered the disqualification of an entire United States Attorney's

office has reversed the disqualification. *See, e.g.*, *United States v. Whittaker*, 268 F.3d 185 (3d

Cir. 2001) (reversing disqualification of United States Attorney's Office for the Eastern District

of Pennsylvania); *United States v. Vlahos*, 33 F.3d 758 (7th Cir. 1994) (reversing disqualification

of entire United States Attorney's Office); *United States v. Caggiano*, 660 F.2d 184 (6th Cir.

1981) (reversing disqualification of entire United States Attorney's Office for the Western

District of Tennessee). *See also*, *In re Harris County, Texas*, 240 Fed. Appx. 644 (5th Cir. 2007)

(reversing disqualification of entire Harris County Attorney's Office because district court made

no findings of impropriety as to the entire office); *United States v. Manna*, Crim No. 88-239,

2006 WL 3063456, *8 (D.N.J. Oct. 25, 2006) (denying motion to disqualify United States

Attorney's Office for District of New Jersey). *Cf. In re Grand Jury Proceedings*, 700 F. Supp.

626 (D.P.R. 1988) (denying defendant's request to disqualify United States Attorney's Office

during pre-indictment stage).  Indeed, the Tenth Circuit has stated that it was "strongly influenced by the fact that [it] can only rarely–if ever–imagine a scenario in which a district court could properly disqualify an entire United States Attorney's Office," and that "because disqualifying an entire United States Attorneys' Office is almost always reversible error regardless of the underlying merits of the case, a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted." *Bolden,* 353 F.3d at 875. The Court of Appeals for the Fifth Circuit has cited with approval the Tenth Circuit's decision in *Bolden*. *See In re Harris County, Texas*, 240 Fed. Appx. at 644. This Court followed *Bolden* in its 2009 holding in *United States v. Perdigao*, finding recusal of the entire USAO-EDLA inappropriate even if the defendant's allegations of misconduct were true. 2008 U.S. Dist. LEXIS 55366 (E.D. La. July 8, 2008)

The Defendant's in this case allegations focus only on certain individuals: Assistant U.S. Attorneys Spiro Lastis, Kevin Boitmann, and Maurice Landrieu.[1] Specifically, defense counsel avers that certain Assistant U.S. Attorneys from the USAO-EDLA hold a grudge against her for her zealous representation of her clients, including Mr. Gross. This grudge resulted in a failure to take into account Mr. Gross' substantial assistance to the FBI and a resulting refusal to grant a 5K reduction to his sentence. Defense counsel also avers that the USAO-EDLA refused to investigate malfeasance that she brought to their attention, and made threats against defense counsel for drawing attention to improprieties in the office. Defendant accordingly seeks recusal of the entire USAO-EDLA because of the office's lack of impartiality in this case and asks the

---

[1] Defense counsel also highlights allegations of improper and illegal behavior against DEA Agent Chad Scott, but the Court finds these arguments tangential given that Agent Scott was not involved in the instant case.

Court to mirror Attorney General Loretta Lynch's decision to remove the office from over twenty other cases.

The Government opposes defense counsel's motion, arguing that she offers no support for her motion for recusal and highlighting their sole right to discretion in granting a 5K.

The Court is concerned with several of defense counsel's claims. Primarily, all of Defendant's allegations focus on the alleged wrongdoing of individual members of the U.S. Attorney's office and not on the misconduct of the entire office. There are attorneys working for the USAO-EDLA who no doubt have no knowledge of Mr. Gross much less had any interaction with him. Accordingly, even if true, the Defendant's allegations do not rise to the level of warranting the disqualification of the entire United States Attorney's office for the Eastern District of Louisiana.

Furthermore, defense counsel argues that the USAO-EDLA's impartiality stems from retaliation against her personally. A finding that the entire USAO-EDLA was impartial and retaliatory towards her would inevitably affect the rest of defense counsel's cases and prevent her from working with the USAO-EDLA in any capacity. This would not be in her interest or in the interest of her clients who benefit from her able and conscientious advocacy.

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that the Defendant's Motion to Recuse is DENIED.

New Orleans, Louisiana, this 23rd day of September, 2016.

UNITED STATES DISTRICT JUDGE

7